United States District Court
Southern District of Texas
**ENTERED**
December 30, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSE ANGEL GARCIA ESPERICUETA, § § § *Petitioner*, § § vs. § § BRET BRADFORD, *et al.*, § § *Respondents*. § | CIVIL ACTION NO. H-25-5587 |

## MEMORANDUM OPINION AND ORDER

Through counsel, noncitizen Jose Angel Garcia Espericueta filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking his immediate release from immigration detention. (Dkt. 1). The Court denied his request for an immediate hearing, but ordered an expedited answer from the respondents. (Dkt. 4). The respondents answered with a motion to dismiss or, alternatively, for summary judgment. (Dkt. 7). Garcia-Espericueta did not respond to the motions, and his time to do so has now expired. Having reviewed the petition, the motions, the pleadings, and the law, the Court denies the respondents' motion to dismiss and motion for summary judgment, grants Garcia-Espericueta's petition in part, and orders the respondents to afford Garcia-Espericueta a new bond hearing within seven days from the date of this Order or else release him.

## I.  BACKGROUND

The parties do not dispute the basic facts of this case. Garcia-Espericueta is a native of Mexico who entered the United States without inspection in 2003. (Dkt. 1, p. 10). In December 2024, his daughter, who is on active-duty with the United States Army, filed a military Parole-in-Place application[1] on behalf of Garcia-Espericueta, which application remains pending. (*Id.* at 10-11). In August 2025, Garcia-Espericueta was arrested by ICE officials in Houston, Texas, and charged with removability. (*Id.* at 10). In October 2025, Garcia-Espericueta's son filed a Petition for Alien Relative on behalf of Garcia-Espericueta, which also remains pending. (*Id.* at 11).

After his arrest, Garcia-Espericueta was detained. In September 2025, he requested a custody redetermination and release on bond. (Dkt. 1-2). That request was denied based on the immigration judge's determination that he lacked jurisdiction to consider the request. (Dkts. 1, p. 11; 1-2, p. 1). Garcia-Espericueta did not appeal that decision. (Dkt. 1, p. 11). He remains detained without bond while his removal proceedings are pending. (*Id.*).

In his habeas petition, Garcia-Espericueta contends that his continued

---

[1] Active-duty military members may apply for parole-in-place on behalf of a non-citizen spouse, widow, widower, parent, son, or daughter. *See* Discretionary Options for Military Members, Enlistees, and their Families, www.uscis.gov/military (visited Dec. 26, 2025). Parole may be granted on a case-by-case, discretionary basis in one-year increments under 8 C.F.R. § 212(d)(5)(a). *Id.*

detention without an opportunity for release on bond violates the Immigration and Naturalization Act, the respondents' own agency regulations, and his due process rights. (*Id.* at 12-13). He asks the Court to declare that his detention is unlawful and either order his release from detention or require respondents to provide him with a bond hearing within seven days. (*Id.* at 13).

The respondents answered the petition with a motion to dismiss or, alternatively, a motion for summary judgment. (Dkt. 7). The respondents first contend that the petition should be dismissed because Garcia-Espericueta failed to exhaust his administrative remedies before filing his petition. (*Id.* at 4-6). Alternatively, the respondents contend that Garcia-Espericueta's petition should be denied because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (*Id.* at 6-13). They contend that this result is supported by the plain language of § 1225(b), the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 221-27 (BIA 2025), and persuasive decisions from other district courts. (*Id.*).

## II.   LEGAL STANDARDS

### A.   Petitions for a Writ of Habeas Corpus

Garcia-Espericueta seeks release through a petition for writ of habeas corpus under 28 U.S.C. § 2241. To be entitled to a federal writ of habeas corpus, the petitioner must show that he is "in custody in violation of the Constitution or laws

or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The petitioner has the burden to demonstrate that a constitutional violation has occurred. *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) ("[N]either habeas nor civil rights relief can be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." (quoting *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985) (per curiam))). Absent a constitutional violation, the writ will not issue.

### B. Motions for Summary Judgment

The respondents have moved for entry of summary judgment. "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). Under Rule 56, the moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party is "entitled to judgment as a matter of law" when the nonmoving party has failed to

4/16

make a sufficient showing on an essential element of the case on which he or she had the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

The respondents first contend that Garcia-Espericueta's petition should be dismissed because he has not exhausted his administrative remedies. The Court disagrees for three reasons.

First, no applicable statute or rule requires Garcia-Espericueta to exhaust his administrative remedies. In the immigration context, "exhaustion of administrative remedies is statutorily required only on appeals from final orders of removal." *Hniguira v. Mayorkas*, No. H-23-3314, 2024 WL 1201634, at *6 (S.D. Tex. Mar. 20, 2024 (citing 8 U.S.C. § 1252(d)(1)). Garcia-Espericueta is not appealing a final order of removal, so exhaustion is not statutorily required.

Second, prudential exhaustion is not required here. "[I]n the absence of a statutory requirement of exhaustion of administrative remedies, the jurisprudential doctrine of exhaustion controls." *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (per curiam). Prudential exhaustion is a court-created doctrine intended to protect administrative agency authority and promote judicial efficiency. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). But when a "legal question is fit for resolution and delay means hardship, a court may choose to decide

the issues itself." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)).

The issue in this case "boils down to a matter of statutory interpretation," which "belong[s] historically within the province of the courts." *Id.* Other courts faced with similar issues have found that preventing six months or more of unlawful detention outweighs the BIA's interest in detaining an individual while the bond determination is resolved on appeal. *Id.*; *see also Lopez-Arevelo v. Ripa*, No. EP-25-cv-337, 2025 WL 2691828, at *6 (W.D. Tex. Sep. 22, 2025) (waiving exhaustion in a similar case because "[t]o wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate [the petitioner's] alleged constitutional injury—detention without a bond hearing"). Under these circumstances, requiring Garcia-Espericueta to exhaust his administrative remedies before pursuing habeas relief would satisfy neither purpose of prudential exhaustion. The Court will not impose that requirement under these circumstances.

Third, the respondents' own briefing establishes that requiring Garcia-Espericueta to pursue his administrative remedies would be futile. A petitioner need not exhaust claims when he can demonstrate "the futility or inadequacy of administrative review." *Gardner v. Sch. Bd. Caddo. Par.*, 958 F.2d 108, 112 (5th Cir. 1992); *see also Honig v. Doe*, 484 U.S. 305, 327 (1988). The futility exception

applies when exhaustion would be "clearly useless" and "it is certain [a] claim will be denied." *All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *15 (5th Cir. Apr. 12, 2023) (per curiam) (cleaned up); *see also Carr v. Saul*, 593 U.S. 83, 93 (2021) ("[T]his Court has consistently recognized a futility exception to exhaustion requirements.").

The record before this Court demonstrates that requiring Garcia-Espericueta to exhaust his administrative remedies would be futile. The respondents contend that the Court should require Garcia-Espericueta to appeal the denial of his request for bond while at the same time arguing that the BIA's decision in Hurtado is correct and mandates his detention. The Court will not require Garcia-Espericueta to pursue an appeal that is patently futile.

The Court finds that requiring Garcia-Espericueta to exhaust his administrative remedies is neither required, prudent, nor legally supportable. The respondents' motion to dismiss for lack of exhaustion is denied.

### B. Detention Pending a Removal Decision

Garcia-Espericueta challenges his continued detention during the pendency of his removal proceedings. This case is one of many filed across the country challenging the federal government's authority to require mandatory detention for certain noncitizens while their removal proceedings are in progress. At issue in these cases is the proper interpretation and application of § 1225(b) and § 1226(a).

Garcia-Espericueta contends that if he is subject to detention, then the plain language of the statutes and longstanding precedent place him within the discretionary detention provision of § 1226(a). The respondents contend that the plain language of the statutes shows that Garcia-Espericueta is subject to mandatory detention under § 1225(b).

Section 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," provides,

> Subject to subparagraphs (B) and (C), in the case of *alien who is an applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. § 1229a].

8 U.S.C. § 1225(b)(2) (emphasis added).

In contrast, § 1226, entitled "Apprehension and detention of aliens," provides, in pertinent part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General–
>     (1)   may continue to detain the arrested alien; and
>     (2)   may release the alien on –
>         (A)   bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>         (B)   conditional parole; but
>     (3)   may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit) unless the alien is lawfully admitted for permanent resident or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

For decades, the Department of Homeland Security has applied § 1226(a), rather than § 1225(b), to noncitizens who are apprehended while already present in the United States without having been admitted or paroled. *See, e.g., Savane v. Francis*, No. 1:25-cv-6666-GHW, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025) (citation omitted). The Department's own regulations concerning asylum procedures adopt this interpretation and application of § 1225(b) and § 1226(a). *See* Inspection & Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (proposed Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Likewise, the Supreme Court has stated that the government is authorized to detain "aliens seeking admission into the country" under § 1225(b) while detaining "aliens already in the country" under § 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). Under this longstanding precedent, Garcia-Espericueta is subject to discretionary detention under § 1226(a) and so is entitled to a hearing at which his request for release on bond would be considered.

However, the respondents have recently "revisited [their] legal position on detention and release authorities" under § 1225(b) and § 1226(a). *ICE Memo:* 9/16

*Interim Guidance Regarding Detention Authority for Applications for Admission*, available at https://perma.cc/4Q6X-GAZC (last visited Dec. 18, 2025). This Interim Guidance states that the Department of Homeland Security has now "determined that [§ 1225] of the [INA], rather than [§ 1226], is the applicable immigration detention authority for all applicants for admission." *Id.* The Interim Guidance goes on to explain this newly adopted position:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. **Effective immediately, it is the position of DHS that such aliens are subject to detention under [§ 1225(b)(2)(A)] and may not be released from ICE custody except by [§ 1182] parole**. . . . For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [§ 1226(a)] during removal proceedings are aliens admitted to the United States . . . with the exception of those subject to mandatory detention under [§ 1226(c)].**

*Id.* (emphasis in original).

Garcia-Espericueta contends that because he was apprehended in the interior of the country more than twenty years after he arrived, he is not "seeking admission" and so is not subject to mandatory detention under § 1225(b). In contrast, the respondents contend that Garcia-Espericueta falls squarely within § 1225(b) because in the context of § 1225(b)(2), the phrases "seeking admission" and "applying for admission" are "plainly synonymous." (Dkt. 7, p. 7). Therefore, "[r]ead properly, a person 'seeking admission' is just another way of describing a person applying for

admission, meaning he is an applicant for admission, which includes both those individuals arriving in the United States and those already present without admission." (*Id.*). The Court disagrees with the respondents' position for several reasons.

First, a basic canon of statutory construction is that "differences in language ... convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017)); *see also Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025) ("[w]hen two different phrases are used in a statute, a variation in terms suggests a variation in meaning" (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012))). The respondents' argument that the Court should treat the different phrases within the statute as synonymous contradicts this maxim.

Second, well-established principles of statutory construction require courts to give meaning to each phrase in a statute rather than construing the statute in a way that renders parts of it superfluous. *See, e.g., TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (cleaned up); *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("every clause and

word of a statute should have meaning") (cleaned up). But the respondents' interpretation of § 1225(b) would make certain portions of it superfluous. As one court has recently explained:

> If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all "applicant[s] for admission," there would be no need to include the phrase "seeking admission" in the statute. That is, rather than stating that mandatory detention is required for any "applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," § 1225(b)(2)(A) (emphasis added), the statute would instead provide for mandatory detention for any "applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted."

*Lopez Benitez v. Francis*, No. 25-CIV-5937(DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (emphasis and strike-through in original); *see also Castañon-Nava v. U.S. Dep't of Homeland Security*, No. 25-3050, 2025 WL 3552514, at *8-9 (7th Cir. Dec. 11, 2025) (rejecting the respondents' proffered construction of § 1225(b)(2)(A) as "violating one of the cardinal rules of statutory construction"). This Court likewise rejects the respondents' efforts to violate this well-established principle.

Third, courts may consider the titles of statutes when interpreting their provisions. *See, e.g., Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002))); *see also United States v. Moore*, 71 F.4th 392, 397 (5th Cir.

12/16

2023). Here, the title of § 1225 states that it applies to the "expedited removal of inadmissible arriving aliens." In contrast, the title of § 1226 states that it applies to the "apprehension" of noncitizens who are already present in the country. These titles contradict the respondents' argument that § 1225 applies to noncitizens who have been present in the country for years and instead support the government's longstanding interpretation that § 1225 applies to noncitizens intercepted at the border while § 1226 applies to noncitizens apprehended away from the border years after they entered.

Based on these three principles of statutory construction, this Court, like many others, is not persuaded by the respondents' argument that their current interpretation of the statutes is guided by their plain language. *See e.g.*, *Castañon-Nava*, 2025 WL 3552514, at *10 (affirming the respondents' motion to stay the release of the petitioner because the respondents "are not likely to succeed on the merits of their argument"). The respondents are not entitled to summary judgment in their favor based on the plain language of the statutes.

In the alternative, the respondents contend that this Court should defer to the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but the Court need not do so. The Administrative Procedures Act "specifies that courts, not agencies, will decide '*all* relevant questions of laws' arising on review of agency action . . . and set aside any such action inconsistent with the law as they

13/16

interpret it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting 5 U.S.C. § 706) (emphasis in original). The Court finds that *Hurtado*'s interpretation of § 1225 and § 1226 is inconsistent with the language of the statutes themselves, as well as with the Department of Homeland Security's own longstanding interpretation and application of those statutes.[2] *See Castañon-Nava*, 2025 WL 3552514, at *9 n.13 ("It also does not escape our notice that Defendants' recent reliance on § 1225(b)(2)(A) to detain noncitizens discovered within the United States upends decades of practice."). Because the *Hurtado* decision utterly ignores the Department's about-face on the proper interpretation and application of § 1225 and § 1226, the Court finds that decision to be unpersuasive.

Finally, the respondents argue that the Court should consider "persuasive decisions from other district courts." (Dkt. 7, pp. 10-13). The respondents suggest that this Court "reconsider" its earlier rulings that found in favor of Garcia-

---

[2]The Department issued its Interim Guidance setting forth its new interpretation of § 1225 without providing a notice-and-comment period that would in most cases be required by 5 U.S.C. § 553(b) for agency rulemaking. Nevertheless, the Court recognizes that "interpretive rules," which are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers" are not subject to the notice-and-comment requirement. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015). Such interpretive rules may also be amended without providing a notice-and-comment period under § 553(b). *Id.* at 102. The respondents do not address whether their new interpretation of § 1225 constitutes only an interpretive rule. But assuming that to be the case, the convenience of avoiding the notice-and-comment requirement "comes as a price: Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" *Id.* at 97 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). The Court is therefore not bound by the Department's new "interpretive rule," assuming it qualifies as such.

Espericueta's position and instead adopt the respondents' position. (*Id.* at 3-4, 13). However, the respondents offer no new persuasive authority that would tend to show that their position is correct. They do not plausibly distinguish the authorities upon which this Court relies, nor do they provide a credible explanation for the recent change in their interpretation and application of the relevant statutes. Nothing in their motion leads the Court to believe that its independent analysis of the statutes, case law, and legislative and administrative history is incorrect. The Court declines the respondents' invitation to reverse itself.

Based on the analysis and principles set out above, the Court finds that the question of whether Garcia-Espericueta's detention should be continued is governed by § 1226(a) rather than § 1225(b). Garcia-Espericueta is not an "arriving alien"; he arrived in this country more than twenty years ago. He therefore does not fall under the plain language of § 1225(b). Instead, he was arrested while present in the country, and he is being detained pending a decision on whether he is to be removed. As such, he falls under § 1226(a).

However, under § 1226(a), Garcia-Espericueta is not entitled to immediate release; instead, under these circumstances, "[m]any courts have . . . found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner." *Lopez-Arevelo*, 2025 WL 2691828, at *13 (citing *Velasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *9

15/16

(D.N.M. Sept. 17, 2025) (collecting cases)). At that hearing, the respondents will have the burden to show by clear and convincing evidence that Garcia-Espericueta either presents a danger to the community or is a flight risk.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The respondents' motion to dismiss or, alternatively, for summary judgment, (Dkt. 7), is **DENIED**.

2. Garcia-Espericueta's petition for writ of habeas corpus, (Dkt. 1), is **GRANTED in part**.

3. The respondents are **ORDERED** to provide Garcia-Espericueta with an individualized bond hearing under 8 U.S.C. § 1226(a) within **seven (7) days** of the date of this Order or else immediately release him from custody.

4. Until the bond hearing is held, the respondents are **PROHIBITED** from removing Garcia-Espericueta from, or transferring him outside of, the Southern District of Texas.

**The Clerk of Court will provide a copy of this Order to the parties.**

SIGNED at Houston, Texas on Dec. 30, 2025.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE